UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARY A. ELLIS,                          )
                                        )
          Plaintiff,                    )
                                        )
     vs.                                )          Case No. 4:13-CV-238 CDP
                                        )
PATRICK DONAHOE,                        )
POSTMASTER GENERAL                      )
                                        )
          Defendant.                    )

## MEMORANDUM AND ORDER

Plaintiff Mary A. Ellis alleges that her former employer, the United States

Postal Service, discriminated against her based on her race, sex, age, and disability;

she also alleges that it subjected her to a hostile work environment, failed to

accommodate her disability, retaliated against her for protected conduct, and

forced her to retire.

Ellis began working for the USPS in 1973. On May 8, 2006, Ellis requested

a week of leave in order to be with her husband during his dental surgery. Ellis

never returned to active work. Instead, from May 2006 to May 2007, Ellis

remained a USPS employee but collected pay based solely upon her accrued sick

leave. In June 2007, after realizing she was no longer receiving paid leave, Ellis

informed the USPS that she would be retiring, effective July 1, 2007.  A few weeks after retiring, Ellis initiated the discrimination claims that led to this lawsuit.

Defendant moved for summary judgment.  After a thorough review of the entire record, I find that most of Ellis's claims are time-barred because she did not report them to the USPS EEO officer within the required time limits.  To the extent her claims are not time-barred, there is no evidence from which a reasonable jury could conclude she was discriminated against.  Because there are no genuine disputes of material fact and the defendant is entitled to judgment as a matter of law, I will grant summary judgment.

## Standards Governing Summary Judgment

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id*.  "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law."  *Diesel Machinery, Inc. v. B.R. Lee*

*Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted).  If the movant does so, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks and citation omitted).

## <u>Background</u>[1]

When Ellis initially filed this suit, and when she filed her First Amended Complaint, she represented herself.  Counsel later entered an appearance.  Although counsel did not further amend the complaint, he represented Ellis at her deposition and in her response to the defendant's summary judgment motion.  The First Amended Complaint contains two counts.  The first is entitled "Count I (Racial Discrimination: Sex, Age, Harassment, Hostile Working Environment and Retaliation)" and the second is entitled "Count II: Disability Discrimination and Retaliation."  The complaint is difficult to parse, but Ellis's deposition testimony and summary judgment briefing assist somewhat in understanding her allegations.

---

[1] The facts set out in this section are either undisputed or are based on Ellis's evidence, except where indicated otherwise. As discussed in more detail below, Ellis's complaint, deposition testimony, and affidavit filed in opposition to summary judgment are often inconsistent.

Therefore, she appears to be asserting the following claims. First, Ellis asserts five (5) discrete acts of discrimination: (1) her acting supervisor Rhonda Spann's hanging up on her when she called to request leave on May 8, 2006; (2) Spann's disapproving her leave; (3) the USPS's failure to timely process her pay adjustments in 2006 and 2007; (4) being put on leave without pay status in June 2007; and (5) not receiving a retirement watch. Ellis also appears to attempt to allege that she was sexually harassed, that she was subjected to a hostile work environment, that she was constructively discharged, retaliation, and that defendant failed to accommodate her alleged disability. In her opposition to defendant's motion for summary judgment, plaintiff discusses only her hostile work environment and constructive discharge claims. Her complaint asserts violations of Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973[2], and the Age Discrimination in Employment Act.[3]

---

[2] The First Amended Complaint references both the Rehabilitation Act and the Americans with Disabilities Act. Because the Rehabilitation Act constitutes the exclusive remedy for a federal employee alleging disability-based discrimination, I will not analyze Ellis's disability discrimination claims under the ADA. *See Loos v. Napolitano*, 665 F.Supp.2d 1054, 1057-58 (D. Neb. 2009) (holding and citing multiple other cases that also hold the Rehabilitation Act is the exclusive remedy for federal employees alleging disability discrimination). This has no effect on the scope of the remedy available to Ellis.

[3] Ellis's complaint also references, within a laundry list of other employment-related laws, the Family and Medical Leave Act. Other than this cursory reference, however, her complaint does not assert an FMLA claim, and she has alleged no facts in her complaint or summary judgment briefing indicating intent to assert such a claim. I will therefore treat her case as though no FMLA claim was asserted.

In May 2006, Ellis was working as a supervisor on Tour 1 (the 11:00 p.m. to 7:30 a.m. shift) at the USPS Priority Annex, generally managing 25-30 employees. She claims that two USPS managers, Ronda Spann and Willie Williams, were the only two officials responsible for discriminating against her. Williams was an acting manager in charge of the supervisors on the Tour 3 shift, from 3:00 p.m. to 11:00 p.m. Spann was typically a supervisor, like Ellis, but also sometimes worked as Ellis's acting manager on Tour 1 when the usual manager was out. At the time of the alleged events at issue in 2006, Spann was Ellis's acting manager. Ellis testified that she did not speak with either Williams or Spann after May 8, 2006.

On May 8, 2006, just hours before her shift was scheduled to begin, Ellis called in to a USPS secretary and requested 40 hours of annual leave starting that day and continuing through May 15. Ellis wished to take annual leave in order to be with her husband during his scheduled dental surgery in Detroit, Michigan. The typical procedure for USPS employees requesting annual leave is for an employee to request it at the beginning of the year. For leave that is not requested in advance, the supervisor or manager must talk with the employee about the circumstances of the leave in order to determine if he or she should approve it; supervisors and managers have the authority to deny leave not requested in advance. Ellis also testified that she called Spann later (after she had arrived in

Detroit), but Spann hung up on her before they had a chance to speak.  In any case, Spann ultimately denied Ellis's request, and for May 8-15, 2006, Ellis was marked Absent Without Leave (or AWOL).

After her week-long absence from May 5-8 in 2006, Ellis never returned to work for the USPS and instead took over a year of sick leave before retiring, effective July 1, 2007.  During the course of that year, there were a few instances in which Ellis was mistakenly paid based on work hours instead of sick leave hours even though she was actually on sick leave.  This had the effect of falsely inflating, in payroll reports, the amount of sick leave Ellis had remaining.  On June 2, 2007, at the request of the plant manager, Spann corrected these mistakes – making eight (8) adjustments for pay periods starting as early as August 2006 and ending in May 2007.  Ellis's paid leave ran out, and she was put on "Leave Without Pay" status, starting May 27, 2007.

After retiring effective July 1, 2007, Ellis was never sent a retirement watch. At the time of her retirement, the person who normally sent out watches was on sick leave.

Regarding the sexual harassment allegations, Ellis testified that in 2003, Willie Williams called her to a conference room and asked her if she ever dated anyone at the USPS.  Ellis responded that she was married.  Williams then asked her if she wanted to switch to his tour of duty and if she ever wanted to go out.

Ellis told Williams "no," and the meeting ended. Williams never touched Ellis, never referred to any parts of her body in a sexual way, and never approached her like this again. Ellis did not tell anyone in management about this encounter until at least a year later. After the encounter, Williams started using some profanity words towards Ellis. For example, he would say things like "Mary, you need to get off your ass and see what's going on over on the other machine" or "what in the hell are you doing." Williams called Ellis "old ass" or "tired ass" in 2004 and 2005. Ellis never reported her claims of harassment to anyone within human resources or anyone with the EEOC. Furthermore, she failed to allege any sexual harassment claims in the EEO charge that led to this action.

Regarding her claim for retaliation, Ellis asserts that she was retaliated against for an EEO claim she allegedly filed in 1998 but did not follow through on. She also asserts her retaliation claim is related to at least one instance in which she called the EEO office to initiate an EEO action (she requested a "packet" be sent to her) but never completed any paperwork or pursued the action further.

The First Amended Complaint alleges that Ellis "has a mental/physically disability (bi-polar disorder/carpal tunnel syndrome) that substantially limits the major life activity of working." In her testimony, however, Ellis never mentioned carpal tunnel syndrome, but instead discussed difficulties with arthritis in her hip. She testified that she asked for a job transfer, but admitted that she never notified

the USPS that she had a disability or needed an accommodation. Although Ellis now claims she has bi-polar disorder, she admits that while she worked for the USPS this disorder was undiagnosed and she believes no one in management knew that she had a mental disability. When asked what illness caused her to be off work from May of 2006 to May of 2007, she said "I was sick"; when asked to describe the nature of the sickness she ultimately said it was stress. She did not provide any medical evidence of stress-related illness to the USPS before she retired.

Ellis claims that she was discriminated against based on her age because she was called old hag, old Mary, and old cow, and because supervisors asked her when she was planning to retire. She also states that Spann discriminated against her based on her disability by calling her Chester, after a TV show character with a bad limp, and Hop-a-Long Cassidy.

## Discussion

To the extent there is no direct evidence of discrimination, I must analyze Ellis's claims under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Under this framework, Ellis must first establish a prima facie case of discrimination. The prima facie case creates a rebuttable presumption of discrimination. *Burdine*, 450 U.S. at 254. Once the plaintiff creates this rebuttable presumption, the defendant must advance a legitimate, non-discriminatory reason for the employment action. *St. Mary's Honor Center*, 509 U.S. at 506-08.

If the defendant carries this burden, then the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for discrimination. *Burdine*, 450 U.S. at 253. The plaintiff at all times bears the ultimate burden of establishing the existence of facts which, if proven at trial, would permit a jury to conclude that intentional discrimination was the true reason for the defendant's action. *See id.*; *St. Mary's Honor Center*, 509 U.S. at 509. In some instances, it is unclear whether Ellis's claims allege a violation of Title VII, the ADEA or the Rehabilitation Act, but the *McDonnell-Douglas* burden-shifting framework applies to claims brought under all three laws. *See, e.g., id.* (Title VII); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995) (ADEA) and *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.) (Rehabilitation Act) *abrogated on other grounds by Torgerson*, 643 F.3d 1031.

**A.    The first four discrete instances of discrimination are time-barred.**

The first four discrete instances of discrimination alleged by Ellis are time-barred because Ellis failed to bring them to an EEO officer within 45 days of their

occurrence.  Before a federal court may hear an employment discrimination claim,

an employee must fully exhaust her administrative remedies.  *Burkett v. Glickman*,

327 F.3d 658, 660 (8th Cir. 2003).  In the case of a federal employee, this requires

that the employee contact an Equal Employment Opportunity (EEO) counselor

within 45 days of the date of the matter alleged to be discriminatory or of the

effective date of the alleged discriminatory personnel action.  *Id.* (internal

quotation marks and citation omitted); 29 C.F.R. § 1614.105(a)(1).  Any alleged

discrete discriminatory acts that occurred outside of (before) this 45-day window

are considered time-barred.  *Id.*; *see also Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 113(2002).[4]

There is no dispute that the earliest date on which Ellis presented her claims

of discrimination against Spann and Williams to an EEO officer was July 23,

2007.[5]  Therefore, any discrimination claims regarding discrete acts that occurred

---

[4] If Ellis is attempting to assert that these five discrete instances show age discrimination under
the ADEA or disability discrimination under the Rehabilitation Act, the same 45-day window
applies.  *See* C.F.R. § 1614.105(a)(1) ("[a]ggrieved persons who believe they have been
discriminated against on the basis of race, color, religion, sex, national origin, **age**, **disability**, or
genetic information … must initiate contact with a Counselor within 45 days of the date of the
matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the
effective date of the action") (emphasis added) and 29 C.F.R. § 1614.103.  *See also Miller v.
Runyon,* 77 F.3d 189, 191, (7th Cir. 1996) (Rehabilitation Act) and *Beason v. Bower*, No. 96 C
1097, 1996 WL 556728, *4 (N.D. Ill. Sept. 26, 1996) (ADEA).

[5] Ellis testified at her deposition that this was the date she first raised her claims with the EEO
office.  She again admitted this in her response to defendant's statement of uncontroverted
material fact No. 12, and her EEO documentation also supports the conclusion that July 23, 2007
was the first day she presented her claims to the EEO office.  Similarly, in her First Amended
Complaint, Ellis alleges July 23, 2007 was the date she "filed a complaint with the Defendant-

before June 8, 2007 are considered time-barred.  Spann allegedly hung up on Ellis

on May 8, 2006; Spann disapproved Ellis's request for vacation leave in 2006; the

processing of Ellis's pay adjustments took place on June 2, 2007; and it was these

June 2, 2007 pay adjustments that changed Ellis's status to leave without pay,

beginning May 27, 2007.  All of these acts occurred more than 45 days before July

23, 2007, and plaintiff's claims based on them are therefore time barred and must

fail as a matter of law.

**B.    The fifth discrete instance of discrimination does not constitute an adverse employment event.**

Although Defendant has argued that Ellis's allegation that she was

discriminated against in violation of Title VII when she did not receive a

retirement watch from the USPS is time-barred, I conclude that it is not.  Roger

Dale Lehnherr, a human resources employee at the local services office for USPS

in St. Louis, provided an affidavit describing the procedure for sending watches.

First, the main human resources office (HRSSC – Human Resources Shared

Services Center) notifies the local service office that a local employee is retiring.

---

agency."  The only conflicting evidence is found in the affidavit attached to Ellis's response to defendant's statement of uncontroverted material facts.  There, Ellis states that she first filed her EEO complaint on July 17, 2007.  Because this latter statement, unsupported by any further evidence, constitutes a self-serving affidavit that contradicts earlier testimony, it is not sufficient to create a genuine issue of material fact.  *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (a properly supported summary judgment motion is not defeated by self-serving affidavits; rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor) (internal quotation marks and citation omitted).

The local service office prepares a retirement certificate for signature by the District Manager. After the District Manager signs the certificate it comes back to the local service office and that office mails the certificate and watch to the retiring employee. The exact day when a watch should have been given to Ellis is unclear, but construing the facts in the light most favorable to plaintiff, it is likely it was no earlier than the last day of her employment, which was June 30, 2007. Therefore, Ellis's claim regarding the watch is not time-barred.

It is not clear whether Ellis is asserting this claim as discrimination based on race, sex, religion, age or disability. But to make a submissible case under any of the applicable statutes – Title VII, the ADEA, or the Rehabilitation Act – Ellis would have to show that she suffered an adverse employment action. *See Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (Title VII); *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 636-37 (8th Cir. 2011) (ADEA); *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008) (Rehabilitation Act) *abrogated on other grounds by Torgerson*, 643 F.3d 1031).

Plaintiff cannot show that her failure to receive a retirement watch was an adverse employment action. "An adverse employment action is defined as a tangible change in working conditions that produces material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and

changes that affect an employee's future career prospects…" *Jackman,* 728 F.3d at 804.   However, "not everything that makes an employee unhappy is an actionable adverse action."   *Buboltz,* 523 F.3d at 868.   "[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Jackman,*728 F.3d at 804.  Not receiving a watch is not a materially significant disadvantage comparable to "termination, cuts in pay or benefits, [or] changes that affect an employee's future career prospects."  There is no evidence that the watch was intended as a substitute for income or benefits Ellis was otherwise entitled to receive – it was simply an honorary gift.  Failure to receive a present in recognition of her career and retirement may be frustrating and perhaps hurtful for Ellis, but it is not a "tangible change in working conditions that produces a material employment disadvantage." *Id.*

Furthermore, even if Ellis could make a prima facie case of discrimination regarding her failure to receive a watch, the USPS has presented a legitimate, non-discriminatory reason for the failure.  Specifically, Lehnherr indicates in his affidavit that the person who normally sends out watches was on sick leave in July 2007 when Ellis's watch would have been sent.  Ellis has presented no evidence that the USPS's explanation is pretextual.

No genuine issue of disputed material fact exists as to Ellis's claim that she was discriminated against when the USPS failed to give her a retirement watch. Therefore I will grant defendant's motion on this claim.

### C. The sexual harassment claim is time-barred and barred for failing to exhaust administrative remedies.

Defendant argues in its motion that Ellis's sexual harassment claims against Williams are barred for failure to exhaust administrative remedies. "A discrimination claim will only be heard if the claimant has exhausted his administrative remedies. … Claims which are like or reasonably related to the substance of the charges in the EEOC complaint are deemed administratively exhausted and are properly within the scope of the lawsuit." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1183 (8th Cir. 1998). Ellis admitted, in deposition testimony and in her response to defendant's statement of uncontroverted material facts, that she did not raise a claim of discrimination based on sexual harassment in the EEO complaint at issue in this case. As a result, any such claim is likely barred for failure to exhaust administrative remedies.

Even if it were not barred on this ground, however, a sexual harassment claim against Williams is certainly time-barred on the same basis as the claims discussed above. In *Morgan*, the Supreme Court held that the statute of limitations in employment discrimination claims applies differently depending on whether the plaintiff is asserting a claim for a discrete act of employment discrimination or for

a hostile work environment. For the latter, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. Here, even if I assume that Ellis is asserting a hostile work environment claim based on several instances of alleged sexual harassment by Williams, her claim is still time-barred. Ellis testified that she did not attend work after May 8, 2006 and did not speak with Williams anytime after that. Therefore, no act of harassment could have occurred within the 45-day period before her July 23, 2007 complaint to the EEO.

> **D.**  **The hostile work environment and constructive discharge claims are time-barred.**

Within the Eighth Circuit, a plaintiff can prevail on a discriminatory harassment or hostile-work-environment claim if she establishes: (1) she was a member of a protected group (or in the case of disability discrimination, that she was a qualified individual with a disability); (2) she was subjected to unwelcome and discriminatory harassment; (3) the harassment was because of her membership in the protected group; (4) the harassment affected a term, condition, or privilege of her employment by creating a hostile work environment; and (5) the employer knew or should have known about the harassment but failed to take proper remedial action. *See Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615

F.3d 977, 981 (8th Cir.2010) and *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 652 (8th Cir.2003). *See also Weyers v. Lear Operations Corp.*, 359 F.3d 1049, 1056 (8th Cir. 2004) ("[h]ostile work environment claims, whether based on age or sex, are analyzed under the same general framework") and *Stipe v. Shinseki*, 690 F. Supp. 2d 850, 883 (E.D. Mo. 2010) (using this framework to analyze a hostile work environment claim in a disability discrimination case). Subject to affirmative defense, an employer is vicariously liable to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

In her opposition to defendant's motion for summary judgment, Ellis sets out her hostile work environment claim explicitly. She asserts she was a member of a protected class in that she was over 40 years old and had a "hip disability." She claims she was "constantly" referred to as old hag, old Mary and old cow, and was "constantly" asked when she was going to retire. She also claims she was called Chester, after a TV character with a bad limp, and Hop-a-Long Cassidy in reference to her hip disability. Lastly, she asserts that the final act of harassment constituting her hostile work environment claim was USPS's "wrongfully terminating her pay in order to force her [to] retire," which her affidavit states occurred on June 2, 2007.

A hostile work environment claim made by a federal employee is considered to have been timely presented to the EEO if at least one of the acts constituting the claim took place no more than 45 days prior to the date the employee consulted an EEO counselor. *Betz v. Chertoff*, 578 F.3d 929, 937-38 (8th Cir. 2009); s*ee also Morgan*, 536 U.S. at 115-18. Based on the facts asserted by Ellis, her hostile work environment claim is time-barred because none of the acts constituting the claim occurred within the 45-day window preceding her initial contact with an EEO officer on July 23, 2007. As discussed above, it is undisputed that plaintiff never returned to work after calling in to request leave on May 8, 2006. Therefore, she could not have been subject to verbal harassment in the workplace after that date. Similarly, as established above, it is undisputed that Ellis's status was changed to leave without pay on June 2, 2007, which was still more than 45 days before the date she contacted the EEO office. In light of this, the defendant's motion for summary judgment on plaintiff's hostile work environment claim will be granted.

As defendant has observed, it is not clear from Ellis's complaint whether she is asserting a claim for constructive discharge. Paragraph 12 of her complaint states that she performed her duties and responsibilities in a competent and satisfactory manner until she was forced to retire. Her opposition to summary judgment similarly alleges that defendant terminated her pay in order to force her to retire. In any case, because Ellis's constructive discharge claim, to the extent

she has alleged one, appears to be based on the same facts as her hostile work environment claim, I conclude that it is similarly time-barred, and I will therefore also grant the defendant's motion for summary judgment as to Ellis's constructive discharge claim.

### D. The retaliation claim is time-barred.

Title VII prohibits employers from retaliating against employees for opposing illegal discrimination. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate that he engaged in statutorily protected activity, he suffered an adverse employment action, and a causal connection exists between the two. *Gilbert v. Des Moines Area Community College*, 495 F.3d 906, 917 (8th Cir. 2007). To establish causation, a plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Texas Southern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Retaliation claims by federal employees are subject to the same 45-day reporting timeline as other discrimination claims. *See Betz*, 578 F.3d at 937-38 (holding that retaliatory acts that took place outside of 45-day window were time-barred) citing *Morgan*, 536 U.S. at 113.

Plaintiff's allegations regarding retaliation are particularly vague. In her deposition, she asserted that her retaliation claim was based upon an EEO

complaint filed in 1998, which she subsequently decided not to pursue. She also asserted that she made later inquiries with the EEO office in 2005, 2006, and 2007, which she also declined to pursue. Plaintiff has presented no documentation or other testimony to support her claims of any prior EEO activity.

Additionally, neither plaintiff's complaint nor the briefing on this motion have made clear which of defendant's actions plaintiff is alleging were retaliatory. This problem, however, is simplified by the fact that the only adverse employment action that plaintiff alleged within the permissible 45-day window was the USPS's failure to give her a retirement watch. As discussed above, the USPS's failure to provide Ellis with a watch does not constitute an adverse employment action, and even if it did, the USPS has provided a legitimate non-discriminatory explanation for not giving Ellis a watch, which Ellis has neither argued nor provided evidence to prove is pre-textual. As a result, I find that as a matter of law, Ellis's retaliation claim fails, and I will grant defendant's motion as to this claim.

### E.  The reasonable accommodation disability discrimination claim fails as a matter of law.

Although Ellis's First Amended Complaint asserts a disability of bi-polar disorder and carpal tunnel, in her deposition and her affidavit supporting her opposition to summary judgment, she indicated that her alleged physical disability was her hip, which needed to be replaced. Defendant argues that Ellis's reasonable accommodation claim fails as a matter of law because Ellis was neither physically

nor mentally disabled, and even if she was disabled she failed to request an accommodation. Because there is no genuine issue of material fact regarding Ellis's failure to request a reasonable accommodation, I find as a matter of law that this claim also fails.

A claim of failure to accommodate a disability in the context of an employment action is a "separate form of prohibited discrimination". *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir.2004). "Under the [Rehabilitation] Act and its regulations, such discrimination occurs if 'a covered entity [does] not ... make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" *Peebles*, 354 F.3d at 766 (citations omitted). The Rehabilitation Act requires employers to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts. *Peebles*, 354 F.3d at 767. To impose this duty, the employee must first request an accommodation for her disability. *Id*.; *see also Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 870 (8th Cir. 2008) *abrogated on other grounds by Torgerson*, 643 F.3d 1031. The employee must provide the employer with enough information to know of both the disability and the desire for an accommodation. *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002).

Discrimination occurs if the employer fails to comply with this legally imposed duty by not making a good faith effort to assist the employee. *Peebles*, 354 F.3d at 767.

A modified-burden shifting analysis is used to consider reasonable accommodation claims because "a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." *Peebles,* 354 F.3d at 766.

> "Under this modified-burden shifting analysis, the plaintiff still must first establish a prima facie case by showing that s/he is disabled; that s/he is qualified to perform the essential functions of the job with or without reasonable accommodation; and that s/he suffered an adverse employment action due to the disability. Furthermore, if the plaintiff believes s/he is "otherwise qualified" with a reasonable accommodation, it is the plaintiff's burden to request such an accommodation. If an employee fails to make a request for accommodation, then the employer has no duty to accommodate."

*Stipe*, 690 F. Supp. 2d at 878 (internal citations omitted).

Ellis has not alleged any facts showing she requested an accommodation for her bi-polar disorder. Indeed, in her deposition, Ellis testified that she did not even know if her employer was aware of her bi-polar disorder. In the absence of any factual support whatsoever, plaintiff's allegation that she was discriminated against because the USPS failed to reasonably accommodate her alleged mental disability must fail as a matter of law.

As to requesting an accommodation for her alleged physical disability, in her deposition, Ellis stated that she asked "management" for a transfer but did not tell them she "had a condition." She testified "I just said because of my arthritis. That's how I phrased it to them, but I didn't put it in writing. … I just said 'Ms. [Spann][6], because I'm having – I got arthritis,' I said, 'do you mind if I could work?" Ellis next testified that, as a supervisor, she understood there are certain procedures one must follow to notify management of a disability and request an accommodation, and she did not follow those procedures. Similarly, in her response to the defendant's statement of uncontroverted material fact No. 96, Ellis admits that she never told anyone in management that she had a disability and needed an accommodation. However, she also states that she told Earl Sullivan, acting MDO, that she had a limp "and could she be put where she could sit down." She also told Charles Booker and James Freeberry[7] "about her hip and that she needed to sit down."

Although the 8th Circuit has recognized there is no single form an accommodation request must take, *see Ballard*, 284 F.3d at 961-62, upon the evidence provided by the parties here, I conclude that no reasonable trier of fact could find that Ellis provided the USPS with enough information that the USPS

---

[6] Very shortly after this testimony, Ellis said Spann was not actually involved in the decision of whether to grant her transfer.

[7] Ellis did not provide any information as to the job roles or titles of Booker or Freebury.

could fairly be said to have known that Ellis sought accommodation for her disability. *See id*. at 962. First, Ellis acknowledges that she did not follow the USPS procedure for requesting an accommodation even though she was aware of it. Furthermore, to the extent she seems to allege that she did request an accommodation, she has simply stated in conclusory fashion that she told three men about her hip and that she asked to "sit down." This is not enough. In making an accommodation request, an employee is required to provide relevant details of her disability and the reasons that the disability requires the requested accommodation. *Stipe*, 690 F. Supp. 2d at 878. Ellis has not indicated that she provided any relevant details about her disability or reasons for requesting an accommodation to her employer. Therefore, I find as a matter of law that her reasonable accommodation disability discrimination claim must fail.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#32] is **GRANTED**.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of December, 2014.